IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| JARED MICHAEL ARABIE, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> LUBA CASUALTY INSURANCE § <br> COMPANY, § <br> § <br> § <br> Intervenor-Plaintiff § <br> § <br> v. § <br> § <br> § <br> IROCK CRUSHERS, INC., § <br> § <br> Defendants. § <br> § | Civil Action No. 6:22-cv-00032-H |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Jared Michael and Amanda Arabie[1] and intervenor plaintiff Luba Casualty Insurance Co. sue Defendants Warren Power and Machinery Inc.[2] and IROCK Crushers Inc. for claims under Texas law. This case is before the undersigned after United States District Judge James Wesley Hendrix referred three Motions to Exclude (Dkt. Nos. 105–07) for a report and recommendation. Dkt. No. 109; 28 U.S.C. § 636(b)(1)(B).

These findings, conclusions, and recommendations (FCR) concern the Motion to Exclude Untimely and Insufficiently Designated Experts and Briefs, Dkt. No. 107. For the reasons below, the Court should DENY the Motion.

---

[1] For convenience, the undersigned will refer only to Jared Michael Arabie.
[2] As explained further below, Arabie's claims against Warren have been dismissed.

1

## I.  FACTUAL BACKGROUND

On or about May 14, 2021, Jared Michael Arabie and James Craig Gautreaux[3] were working on a wind farm project near Ozona, Texas. On that date, Arabie and Gautreaux were using a TC-20 Portable Tracked Crushing Plant. The TC-20 is an "impact" style portable rock crusher that is designed and manufactured by IROCK. Dkt. No. 105-2 at 29–30.



*Figure 1 - Depiction of TC-20 (the undersigned will refer to the impactor and immediately surrounding area as the crushing chamber). Dkt. No. 118-1 at 145.*

To use the TC-20, a worker operates an excavator (or some other type of loading machinery) to load rocks into the hopper which then leads into a feeder that shakes the rocks into the machine's crushing chamber. Once the rocks are in the crushing chamber, the machine breaks up the rocks using a horizontally turning rotor to throw them against a reinforced wall. After the rocks have been crushed to a small enough size, they fall out of the chamber and onto a conveyor belt which spits the rocks into a discharge pile.

---

[3] Gautreaux also sued and the Court consolidated both cases. Gautreaux's claims have been resolved and he is no longer a party to this consolidated action. Dkt. No. 124.


*Figure 2 - Photograph of crushing chamber and rotor (middle). Dkt. No. 120-1 at 46.*


*Figure 3 - Depiction of crushing chamber with lid open. Dkt. No. 118-1 at 146.*

At some point, the TC-20 Arabie and Gautreaux were using became jammed. Dkt. No. 105-2 at 11. The men lifted the lid to the crushing chamber and entered the chamber to clear the debris causing the jam. *Id.* Before doing so, though, Arabie and Gautreaux did not use the machine's lock-out and tag-out ("LOTO") system[4] or the lock-pin system on the machine's rotor.[5] *Id.* at 9–10, 23.

What happened next is unclear, although the end result—both men laying severely injured on the discharge pile—is not. *Id.* at 11–12. Arabie contends that he and Gautreaux were standing or kneeling on the rotor removing debris. *Id.* at 12. Next, he says that the rotor began to spin unexpectedly, causing both men to lose their balance. *Id.* Arabie claims that they fell into the area between the rotor and plate (*see* Figure 3), but soon after, both

---

[4] Generally, lock-out tag-out refers to "practices and procedures to shut down equipment, isolate it from its energy source(s), and prevent the release of potentially hazardous energy while maintenance and servicing activities are being performed." OSHA, *Lockout/Tagout eTool*, https://perma.cc/HDU5-CR6C.

[5] The lock-pin system requires a worker to insert a pin through a hole on the wall of the crushing chamber into a hole on the rotor. *See* Dkt. No. 105-2 at 88. Doing so prevents the rotor from turning while the pin is engaged. *Id.*

3

men were rendered unconscious. *Id.* From there, the contention is that the men went through the crushing chamber, onto the conveyor, and fell approximately 8–10 feet from the conveyor onto the discharge pile.

Both men suffered extensive injuries. Arabie suffered a laceration of his scalp, multiple vertebral fractures, a hip fracture and dislocation, multiple rib fractures, and an ankle fracture and dislocation. *See* Dkt. No. 118-1 at 148–57. Gautreaux suffered contusions on his lower back and forehead, a laceration of his scalp, a chest fracture, multiple rib fractures, and multiple vertebral fractures. *See id.* at 157–61.

## II. PROCEDURAL HISTORY

### A. Case History

The parties and the Court are well-familiar with the procedural history in this case. Thus, the undersigned limits the history here to what is relevant to the motion under consideration here. As relevant here, Arabie brings product liability claims under Texas law against IROCK alleging that the TC-20 is defectively designed and contains inadequate warnings and instructions. Dkt. No. 38 at 1–2.

The Court issued a Scheduling Order which, after several modifications, set Arabie's expert-designation deadline for September 27, 2023. Dkt. Nos. 48, 68, 85. On September 27, Arabie designated two liability experts, an expert in vocational rehabilitation and life care plans, and an expert in economic loss. Dkt. Nos. 86–87. He did not designate any treating physicians under Rule 26(a)(2)(C). Then, on January 8, 2024, more than three months after the expert-designation deadline, Arabie provided notice that he would call

twelve of his treating physicians as non-retained expert witnesses under Rule 26(a)(2)(C). Dkt. No. 107-4.

Arabie's designated treating physicians[6] provided medical care for his injuries sustained as a result of the accident. Each is expected to testify as to the care that they provided, including their diagnosis, prognosis, physical examination, interpretation of diagnostic studies, and review of accident-related medical records. Dkt. No. 107-4. Many are also expected to testify as to medical causation, physical restrictions, and Arabie's need for future care. *Id.*

### B.    Motion to Exclude

IROCK filed[7] its Motion to Exclude Plaintiffs' Untimely and Insufficiently Designated Experts and Briefs. Dkt. Nos. 106–07. IROCK makes three procedural arguments for the exclusion of the treating physicians. First, it argues that Arabie did not timely designate the treating physicians as non-retained experts under Rule 26(a)(2)(C). Dkt. No. 107 at 7–13. It notes that Arabie did not designate the treating physicians as experts until January 8, 2024, which was after the September 27, 2023, deadline for Arabie to designate expert witnesses. *See* Dkt. Nos. 85, 107-4.

Second, IROCK argues that even if Arabie's January 8 designations of treating physicians were timely, they were not sufficient. Dkt. No. 107 at 14. Specifically, IROCK

---

[6] These physicians are: Dr. Jordan Jude, Dr. Richard Barber, Dr. Arturo Lopez, Dr. Hitesh Gidwandi, Dr. Robert Blank, Dr. Robert Franklin, Dr. Brandon Fontenot, Dr. Christopher Raney, Dr. Christopher Lagraize, Dr. David Clause, Dr. Charles Bowie, and Dr. David Rogenmoser. Dkt. No. 107-4.

[7] Warren joined this Motion, however, on February 22, 2024, the Court dismissed the claims against Warren after the parties filed an Agreed Motion to Dismiss. Dkt. Nos. 122–23. As a result, the undersigned will treat the Motion to Exclude as though it was filed solely by IROCK.

5

contends that Arabie's Rule 26(a)(2)(C) designations did not identify the opinions that each treating physician would testify to or the factual bases for those opinions. *Id.* Without this information, IROCK says that it cannot properly prepare its cross examination of these witnesses. *Id.*

Finally, IROCK claims that several treating physicians were not listed as people having discoverable information in Arabie's Initial Disclosures (Dkt. No. 107-3) and should be excluded under Rule 37. Dkt. No. 107 at 7.

Arabie make several points in rebuttal. As to the timeliness of his Rule 26(a)(2)(C) designations, Arabie admits that he did not designate the treating physicians by the deadline set in the Court's Scheduling Order. Instead, he argues that because the Scheduling Order deadline in question did not explicitly mention Rule 26(a)(2)(C) witnesses, such as treating physicians, he assumed Rule 26's default deadline of 90 days before trial applied to those designations. Dkt. No. 121 at 14.

Arabie also maintains that IROCK was aware of his intention to call the treating physicians as experts because the parties coordinated for the deposition of several treating physicians. *Id.* at 8–12. And Arabie further claims that, until the Motion to Exclude, IROCK did not raise the timeliness issue. *Id.* at 9. Arabie cites to a series of emails—which are dated after the September 27 deadline for expert designations—amongst counsel for the parties in which counsel for Warren seemingly acknowledged that the treating physicians would be called as experts. *Id.* Further, Arabie emphasizes that IROCK deposed several treating physicians in January of this year without word that it believed the physicians were not timely designated or properly disclosed. *Id.* at 9–11.

In response to the argument that several of the treating physicians were not listed in his Initial Disclosures, he notes that IROCK received his medical records from the treating physicians during discovery, which he urges eliminated any harm traceable to their omission. *Id.* at 6–7.

IROCK did not file a reply.

### III. ANALYSIS

**A.    Arabie's designations were late, but exclusion is not warranted.**

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. The Rule distinguishes between experts retained by a party and those who are not. The parties agree that the treating physicians fall under the latter and are exempt from the written report requirement that applies to retained experts. Fed. R. Civ. P. 26(a)(2)(B). Nonetheless, absent a stipulation or court order, a party designating a non-retained expert, including treating physicians, must provide "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). A party must disclose this information by the time set by a stipulation or court order, or, if neither apply, then no later than 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D)(i).

When a party's designation is not timely, courts look to the four factors laid out in *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990), to determine whether to strike the untimely designated expert: "(1) the explanation for the failure to identify the witness;

(2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."

*Arabie's explanation*. Arabie contends that his late designations were the result of his misreading of this Court's Scheduling Order. The Scheduling Order as modified states:

> Unless otherwise stipulated or directed by order, the party with the burden of proof on the issue subject to the expert designation shall file a written designation of the name and address of each expert witness who will testify at trial for that party and shall otherwise comply with Fed. R. Civ. P. 26(a)(2) on or before [September 27, 2023].

Dkt. Nos. 48, 85. This language unambiguously requires the designation of all experts—both under Rule (a)(2)(B) and (2)(C)—by September 27, 2023. Still, it is plausible that Arabie mistakenly believed, however unreasonably, that the Rule 24(a)(2)(D)'s default deadline controlled because he filed his designations exactly 90 days before the original trial date—*i.e.*, the deadline set by that Rule.

While Arabie's explanation does not justify his delayed designation, at the very least, his reasoning indicates the absence of bad faith or some other improper motive. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007) ("We take seriously this lack of explanation, having held, for example, that exclusion of expert witnesses is particularly appropriate where the party has failed to provide an adequate explanation for their failure to identify their expert within the designated timetable.").

Ultimately, the undersigned finds that Arabie's explanation is unpersuasive because the Scheduling Order deadline at issue clearly states that it applies to all designations under

8

Rule 26(a)(2), which includes those required under 26(a)(2)(C). This factor does not favor Arabie.

*Importance of the treating physicians' testimony*. The second factor, though, unquestionably weighs in Arabie's favor. In *Betzel*, the Fifth Circuit explained that the second *Geiserman* factor, properly understood, weighs against exclusion when the expert's testimony is important to a party's case. 480 F.3d at 707–08.

Arabie's injuries and medical care are central to his case; he will not be able to prove critical aspects of his injuries, their cause, and his treatment and recovery without testimony from the treating physicians. IROCK agrees and responds that this reality "emphasizes the importance of the Court's deadlines and why they should have been met." Dkt. No. 107 at 10. The *Betzel* Court rejected a similar argument and made clear that the more important an individual's testimony is, the more that the second factors weighs against exclusion. *See* 480 F.3d at 707–08 (noting that in previous cases the Fifth Circuit had "applied this second factor in unexpected ways, sometimes even standing it on its head" by considering the importance of an expert's testimony as a reason to underscore the need for proper designation and disclosure).

The undersigned finds that the second factor supports Arabie.

*Prejudice to IROCK*. The third factor also weighs in Arabie's favor. IROCK insists that it "did not think that the trial would involve the testimony of 12 treating physicians." Dkt. No. 107 at 10–11. It is difficult for the undersigned to accept this statement as sincere, or that IROCK's counsel wishes anyone to believe that they did not long anticipate the

testimony of a large number of treating physicians in this case. The overall context and history of this case suggests, if not compels, the implausibility of this statement.

It appears undisputed that: (a) eight of Arabie's treating physicians were disclosed in September 2022; (b) IROCK was provided with all of Arabie's medical records during discovery; (c) several experts—including some of IROCK's—relied on those medical records in their opinions and reports; (d) Arabie's counsel was and remains willing to facilitate the deposition of the treating physicians and allow rebuttal experts to be designated; and (e) counsel for all parties exchanged emails[8] in November 2023—two months after the Rule 26(a)(2)(C) deadline—discussing the postponement of treating physicians' depositions until 2024. Dkt. No. 121 at 7–9.

As Arabie points out, "[t]he 'basic purpose of [Rule 26 is to] prevent[ ] prejudice and surprise.'" *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013) (quoting *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994)). Given the extensive injuries at issue in this case, it was foreseeable that Arabie would call his treating physicians at trial; therefore, any prejudice to IROCK caused by Arabie's failure to timely designate his treating physicians as expert witnesses is minimal. This factor favors Arabie as well.

*Potential to cure*. Finally, the lack of prejudice means that there is little to be cured, and thus, the fourth factor tilts in favor of Arabie. In *Betzel*, the Fifth Circuit emphasized

---

[8] Even after the expert-designation deadline, counsel for Warren—IROCK's co-defendant—expected Arabie to call the treating physicians as experts, which prompted the statement: "I have more of a concern about [treating physicians] that would be trying to prove up future medical, which may have some issues that result in an expert challenge." Dkt. No. 121-3 at 11.

that "a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time." 480 F.3d at 708. This continuance can allow for a party to depose an expert witness, file *Daubert* challenges, or designate experts for rebuttal.

In its Motion to Exclude Arabie's treating physicians, IROCK argues that "[a] continuance to permit the late designation of treating physicians that were known to Arabie long before the designation deadline will only delay the resolution of this matter." Dkt. No. 107 at 11. But in the week prior to the undersigned's entry of this FCR, Arabie has filed two motions to continue the trial setting. Dkt. Nos. 126, 128. Notably, both motions were unopposed by IROCK's counsel. In the second of these motions, Arabie seeks a continuance of 90 to 120 days and represents that, "counsel for IROCK and LUBA have graciously agreed to a resetting of this matter with the additional time requested by Plaintiffs so that coordination of witnesses and trial preparation can be accomplished." Dkt. No. 128 at 3.

Regardless of how the Court resolves the still-pending second motion for a continuance, it appears clear that any delay occasioned by a continuance is not significant to IROCK. To be clear, counsel's cooperation in such matters—again regardless of how the Court rules—is to their considerable credit. But if the Court looks favorably on the Arabies' unopposed motion for a continuance, even in part, the undersigned recommends that the Court further find good cause to modify the Scheduling Order for the limited purpose of

11

allowing IROCK a reasonable time to designate rebuttal experts before trial and to conduct depositions of the other treating physicians.[9]

All of this is not to say that it was okay for Arabie to miss a critical deadline. But when considered together, the absence of bad faith, the importance of the treating physicians' testimony, the lack of substantial prejudice to IROCK, and the potential for the Court to effect a cure all support the undersigned's recommendation to deny IROCK's Motion to Exclude the treating physicians.

### B. Arabie sufficiently disclosed the expected testimony for each treating physician.

Having addressed the timing of Arabie's designation, the undersigned now turns to the sufficiency of his disclosures. As already described above, a party must disclose a non-retained expert and state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

A "summary of opinions" requires that a party provide "a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case." *Tolan v. Cotton*, No. H-09-1324, 2015 U.S. Dist., 2015 WL 5332171, at *6 (S.D. Tex. Sept. 14, 2015). "Similarly, it does not suffice to reference large bodies of material sources of facts without stating a brief account of the main points from those large bodies on which the expert relies." *Id.*

---

[9] The undersigned acknowledges the logistical demands that this proposal would place on Irock, however, under the circumstances, the undersigned does not believe that exclusion is warranted, and this proposal at least gives Irock an option to consider.

At the same time, it is important that courts not demand too much, "[a]fter all, if Rule 26(a)(2)(C) requires an expert disclosure with a level of detail akin to an expert report, then the Federal Rules of Civil Procedure would have no reason to distinguish between witnesses that do require an expert report and those that don't." *Blueitt v. Crestbrook Ins. Co.*, No. 4:22-CV-00466-O, 2022 WL 19023856, at *3 (N.D. Tex. Dec. 8, 2022).

IROCK argues that Arabie's disclosures do not provide enough information regarding the treating physicians' actual opinions and the factual bases for these opinions. For the sake of brevity, the undersign will forego a complete rendition of the disclosures for each treating physician. Rather, by way of example, consider Arabie's disclosure for Dr. Blank:

> Dr. Robert Blank is a cardiologist who treated Plaintiff, Jared Arabie, at Methodist Hospital for heart and pulmonary complications from the May 14, 2021 crush injury. He will testify as to his diagnosis of cardiogenic shock secondary to a pulmonary embolism and deep vein thrombosis in plaintiff's bilateral lower extremities. He will further testify regarding the subject matter contained within his treatment records including, but not limited to, his review of symptoms, examination, interpretation of diagnostic studies, diagnosis, and treatment. Dr. Blank will testify as to the accident-related medical records from other providers, prognosis medical causation, physical restrictions, and future medical treatment recommendations.

Dkt. No. 107-4 at 4.[10] Rule 26(a)(2)(C) "is intended to ensure that an opposing party has some notice of what an expert witness who is not retained or specially employed will testify about." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 754 (N.D. Tex.) (citing 8A CHARLES ALAN WRIGHT, ET. AL., FEDERAL PRACTICE AND PROCEDURE § 2031.2 (3d ed. 2010 & Supp. 2021)). The undersigned finds that Arabie's Rule 26(a)(2)(C) disclosures

---

[10] Arabie's disclosure for Dr. Blank is perhaps the least extensive. *See generally* Dkt. No 107-4.

provided sufficient information to give IROCK notice of what they were going to testify about.

As to the factual bases for Dr. Blank's opinions, Arabie's disclosures are not unlike that in *Tidwell v. Gomez* where the Court found the following disclosure to be sufficient under the facts of the case:

> Dr. Rose is expected to testify regarding Plaintiff's medical history, including Plaintiff's previous wrist injury, the extent of Plaintiff's injuries suffered because of the alleged incident in this case, the association between previous injuries and the alleged injury regarding ongoing medical complaints, and the treatment provided to Plaintiff as a result of those injuries.

No. 5:19-CV-00179-H, 2022 WL 20686845, at *1 (N.D. Tex. Aug. 12, 2022) (Hendrix, J.) (citation and internal quotation marks omitted). There, the court declined to adopt a bright-line approach holding that the disclosure of medical records could never suffice as a summary of facts and opinions. *Id.* at *4 (distinguishing from *Knighton v. Lawrence*, No. 14-718, 2016 WL 4250484, at *2 (W.D. Tex. Aug. 9, 2016)). Unlike *Knighton*—which involved 29 medical providers—*Tidwell* involved only a single provider. *Id.* This case, though, falls in between.

The undersigned agrees that Arabie could have provided more regarding the facts underlying the treating physicians' opinions, however, the question is whether he was required to do so given the availability of Arabie's medical records and the extensive discovery in this case. In this regard, the undersigned is mindful of the advisory committee's admonition that courts "must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel

14

as those who have." Rule 26(a)(2)(C) advisory committee's notes (2010). Given this policy preference and the inherent limitations on the scope of a treating physician's testimony as an expert,[11] the undersigned finds that Arabie's disclosures complied with Rule 26(a)(2)(C) and that the witnesses identified therein should not be excluded on that basis.

Further, even if Arabie's designations were deemed deficient, exclusion would not be guaranteed. The *Geiserman* factors also apply to a challenge seeking an expert's exclusion on the ground that they were not adequately disclosed. *See Erving v. Dallas Hous. Auth.*, No. 3:16-CV-1091-L, 2018 WL 4409797, at *15 (N.D. Tex. Sept. 17, 2018). Applied in this context here, the *Geiserman* factors do not support exclusion. For one, Arabie's has made a good-faith effort to comply with Rule 26(a)(2)(C) and the treating physicians' testimony is important. In addition, IROCK has Arabie's medical records which substantially limits, if not wholly eliminates, any prejudice to it. But most crucially, the Court could cure any inadequacy by requiring Arabie to supplement the disclosures.

Thus, the Court should find that Arabie's disclosures are sufficient.

C.   **The omission of several treating physicians from Arabie's Initial Disclosures resulted in little if any harm to IROCK considering the availability of his medical records.**

Federal Rule of Civil Procedure 26 (a)(1)(A)(i) requires a party to provide: "the name . . . of each individual likely to have discoverable information . . . that the disclosing

---

[11] "[I]f a disclosing party does not provide a written report from a treating physician, district courts in this circuit have held that the treating physician's 'testimony must remain confined to facts disclosed during care and treatment of the patient, including his diagnosis, the causation of a plaintiff's injuries, and the patient's prognosis, as long as the doctor formed those opinions based on his personal knowledge and observations obtained during the course of care and treatment.'" *Tidwell*, 2022 WL 20686845, at *2 (quoting *Galvez*, 575 F. Supp. 3d at 754 (internal citations omitted)).

15

party may use to support its claims or defenses[.]" If a party fails to make a disclosure, Rule 37(c)(1) prohibits the use of an undisclosed individual as a witness "unless the failure was substantially justified or is harmless." A court may also impose other sanctions including but not limited to an award of attorney's fees or adverse jury instructions. *See* Fed. R. Civ. P. 37(c)(1)(A)–(C).

In his Initial Disclosures, Arabie listed just four of the treating physicians—that he later designated as experts in his Rule 26(a)(2)(C) designations—as individuals likely to have discoverable information. *Compare* Dkt. No. 107-3, *with* Dkt. No. 107-4. But several reasons demonstrate why Arabie's omissions did not harm IROCK. Tellingly, IROCK does not describe how it has been harmed. IROCK's Motion focuses instead on the prejudice it claims to have suffered because of the untimely and, in its opinion, insufficient disclosure of these physicians as experts. *See generally* Dkt. No. 107. In addition, it is also telling that IROCK does not claim that it was wholly unaware of these physicians and it does not deny receiving Arabie's medical records, a review of which would have presumably revealed the names of the undisclosed physicians.

At base, there is simply nothing to suggest that IROCK has been harmed. Thus, the omission of several treating physicians from Arabie's Initial Disclosures was harmless, and the Court should not preclude their testimony on this basis.

## IV. CONCLUSIONS AND RECOMMENDATIONS

For the reasons above, the undersigned RECOMMENDS that the Court DENY the Motion to Exclude Untimely and Insufficiently Designated Experts. In the alternative, the undersigned recommends that the Court find good cause to modify the Court's Scheduling

16

Order to allow IROCK to designate a rebuttal expert to the treating physicians. In the event that the Court finds Arabie's disclosures do not satisfy Rule 26(a)(2)(C), it should order him to supplement his disclosures before trial.

## V.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 8th day of March 2024.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE